Don LaPorte appearing for Appellate and Michael Franco appearing for Appellate. All right. Does the Appellate wish to reserve any time? You come to the podium, please, so we can hear you. And how much time? I'm sorry, I couldn't hear you for five minutes. All right. Thank you very much. You may proceed. Your Honors, Appellant is simply asking that it be given its day in court in this matter with the full and fair opportunity to present its case. With all due respect, Judge Zerzullo has improperly denied Appellant that opportunity from day one of this case. Other than the cases cited by the Bankruptcy Court in support of its application of the Doctrine of Collateral Estoppel in this matter, Judge Zerzullo cites no authority supporting his decision to exclude almost all of Appellant's evidence in support of its motion to dismiss. By ignoring this Court's mandate, by denying Appellant's motion to compel debtor to produce the transcript, marked transcripts which Appellant has requested since the time it filed its motions to dismiss, by denying the Appellant's motion to disdain consideration of the discharge until this appeal was heard, and by denying the objection to discharge, excuse me, filed by Appellant, and granting discharge to... May I ask you a question? Yes. Were you counsel in front of Judge Zerzullo? I appeared at the hearings on the motions to dismiss. Okay. Well, on two occasions and maybe more, there's a fairly simple local rule, isn't there, for how one presents a 2004 exam transcript? There is, Your Honor. And did you follow that? Judge Zerzullo thought you didn't. No, he thought we did not because what we failed to do, according to Judge Zerzullo, was bring a motion to compel the debtor to mark the transcripts. I don't think that's what I read, but that's fine. Okay. Okay. But, again, when we brought our motion to compel finally for the discharge, to compel the production of the transcript pages, Judge Zerzullo would not grant the motion to compel, said it was unnecessary. Well, because you had already not followed the rule twice. Well, but this was in advance. We did exactly what he wanted. I can supplement the record with... I don't want you to do that. ...the motion to compel. Okay. No, we tried to comply throughout. But, in particular, we tried to comply by bringing the motion to compel the debtor to submit the transcript pages, Mark, that we had previously submitted to the debtor. And he refused to do so. He didn't have to do so. If you look at the history of this case, the debtor has filed untimely oppositions. He has filed fraudulent schedules. In amending those schedules, he's been fraudulent. He's not... But, you know what, we're not going to get to that point as an appellate court. I'm just trying to figure out what Judge Zerzullo did and why that was a mistake. I understand that. I mean, the first point is he believed that he was enforcing the local rules. And you may have a different view of how that played out. But he was pretty clear about what he thought he was doing. When the matter was remanded, you know, we... Actually, Judge Taylor and I were on the prior panel. I recall. And there was some concern raised about the preclusive effect. And he took that in a very broad way and addressed the question of preclusion with respect to the second and third hearings with respect to there simply not being any evidence. So, in his view, it really wasn't just a procedural question. It was a substantive question. I don't have anything in front of me that's going to allow me to make the decision these people want me to make. So it is preclusive. Well, it would be preclusive if it was true, if there was no admissible evidence before him. But that was clearly not the case. If you throw out the deposition transcripts, and I pointed this out in my argument, there's hundreds of pages of documents that the debtor produced under court order in response to 2004. You know, that's okay. If they are authenticatable on their face, that's one thing. It doesn't make them admissible. I mean, it's a different question. I understand. And that's what I think his concern was. Well, I think I cited case authority that says that they can be, they're self-authenticating. Authentication is a different question. You may be right about part of that, but that doesn't make them admissible is the problem. Well, what makes them, I would suggest, what makes them admissible is that I'm the one who propounded the discovery. I'm the one who personally received the protection. Well, if you're going to testify, you're going to get yourself disqualified fairly quick. It's in my declaration. Right. You don't want to be a fact witness here. That's not the point. Okay. The request for judicial notice in and of itself, he denied that. He denied our declarations that were based on personal knowledge. He found they weren't based on personal knowledge to a large part, didn't he? I appeared at the depositions. I heard what the debtor had to say. It may be a credibility issue, and it may be a credibility issue as to my client. No, I think the way I read it was, number one, that was sort of an end run around the 2004 problem. And I think he, I mean, the way I think he disposed of it was to say, there's a fundamental rule you're supposed to follow. You didn't follow it. I'm not going to let you get this in through saying, well, I sat there and I think I heard this. That's what I think he did, right? That was a local rule that was much more restrictive than the federal rules in which we already argue that. Yeah, I know. That's water over the dam. And you're the one talking about that now? No, what I'm arguing, and I cited authority to that effect, is that the deposition transcript is not the only way of getting that evidence before the court. That's in my brief. Okay. And so I'm saying that if you won't accept the deposition transcripts, not you, but if the court, bankruptcy court, didn't accept the deposition transcripts, we gave him another alternative method of getting that evidence before him. If you threw out everything, all of our evidence, and just look at the admissions of the debtor himself, yeah, I took gambling junkets, and we went to Washington. We never spent more than $300 a day on these junkets. But you look at his statements, see the hotel bills, the shows, the food, the withdrawals from teller machines. And again, coupled with the debtor's own admissions, he admits that he gambled away money of the estate during a bankruptcy where debtors were getting paid pennies on the dollar. The other problem here is that, excuse me, is that, I'm sorry, I lost track. Take a minute. I think I've been in the hospital, so I'm trying to take anything out here. But the appellant's argument, if you just look at the debtor's own admissions, at his own schedules, which the judge, Cerzullo, said were amended, you know, abundant number of times, that's not the case. They were barely amended, and they weren't amended correctly. In his opposition to the motion to dismiss both motions that are appropriate, he admits, yeah, we purchased four cars that we didn't report after the case was confirmed. Yeah, we transferred cars. Yes, I received at least $120,000 in workers' compensation. I mean, this is a case where the fraud is so abundant and so gross and was not discovered until long after the plan was confirmed. And the only reason it was discovered is because we brought the motion to dismiss the first time based on the debtor's failure to maintain the property from an outward appearance that looked seriously deteriorated and not pay insurance. And then the debtor argued in response, I spent all this money to repair the property. We looked at the schedules and said, how this is on declaration. Yeah, but the problem with the first motion was failure to sign the declaration, if I remember correctly. And a service issue, right? Yes, it was. But I don't even think that should be before the court. No, but I'm commenting on what you're commenting on. No, no, it was. And we agree there has been mistakes since day one by both parties in this case. But what my client didn't do was commit fraud. And it did not commit fraud over and over again. And I think as I stated in my brief, I don't care if somebody in the case law is, there's case law to this effect, whether it's failure to report a $5,000 expense or $3,000 or a million dollars or in this case hundreds of thousands of dollars, it's still fraud. My client has been denied its full and fair opportunity to present its case. We argue that Judge Serzolo has exhibited, in our opinion, impartial, I mean, has not exhibited impartiality throughout this case. Every single decision has been made. In his transcript, he said in the second hearing, did you bring a motion to inspect the property? Did you conduct a 2004 examination? Why not? We immediately filed the motion to inspect the property. He denied it. We had to go out in the hall and stipulate to be able to inspect the property. But you're getting, you're past your five minutes and you're getting a little far afield. So do you wish to continue or do you wish to reserve? I'll reserve. Thank you. Thank you. Mr. Franco? Yes, ma'am. May it please the Court, Michael Franco. I'm appearing for the debtor, the appellee. In this particular matter, in the original case that was remanded, they did say that a discharge might moot this. A discharge was entered this week. All right. And then there was also a motion before Judge Serzolo for notice of stay or motion for stay pending appeal. That was denied just two days ago as well. So they've appealed the discharge and they've brought a motion for stay pending appeal? I believe so before Judge Serzolo. Okay. And then so I think they, as I talked to Mr. Lala this morning, I believe they did file a notice of stay of appeal or they noticed an appeal on both of those. Okay. In this particular matter, after Judge Serzolo's specific findings after remand, I think it's pretty clear that there was not an abuse of discretion. If there were problems with this case or if there was any unfairness, it didn't come from the debtor and it didn't come from the judge. It came from the problems that arose from the various motions to dismiss. Any practitioners had a problem where they filed a motion and it got denied and then they need to refile it. As the old saying goes, nothing concentrates the mind like the sight of the gallows. If you get a dismissal, you think, well, I'm going to be even more careful next time. That's not what happened. So I understand that the appellant's attorney was talking about how the judge asked him if they did this, if they did that, that was evincing some sort of hostility. Then they ran out and did it. If anything, he was kind of giving them a hint. This is what you need to do. And then they didn't do it properly. In essence, the appellants are arguing that they've crafted, I'm going to use the analogy of a boat. They're making a boat and they're going to sail it to the intended destination of what they're seeking in their motion. Their boat was full of holes because of their own improperly crafting that boat. And now they want to blame everyone else. They want to say, well, you don't understand what we were going to prove when we got to where we were going to get to go. But it was their own fault that the boat started leaking because it was missing material parts. They did not prove their case. Well, there's a suggestion from appellant's counsel that there was some obligation to respond to a request for the 2004 exam and that the appellee didn't do so. And that's the problem with the 2004 exam presentation. But then there's procedures in which the person propounding the discovery or the 2004 can follow. It's not as if all they needed to do to be thwarted is just not have someone not cooperate and then they'd say, okay, well, then it's game over. Our system would grind to a halt if that were the case because litigants can be very litigious. They're in a dispute. So if one party doesn't do something, that doesn't mean, oh, forget it. It's game over. There's nothing we can do. There is a response to that. This case was well-lawyered in the sense that there was plenty of lawyers working on the other side. There were plenty of people working on this, looking at this. They filed motions that didn't go well. They refiled motions. They refiled motions again. At a certain point, and that's a certain point you get to the review of this and you say, at what point will it be enough? Because after reading Judge Zerzullo's specific findings and explanation on remand, I don't know that there's a lot left to argue about. I understand the appellants may not like the results, but it should come as no surprise given the case history. I have nothing more to add. I'm fine. Thank you very much. Thank you very much. Thank you very much. Ms. Laporte. Ms. Laporte, is this appeal moot? No, we don't believe it is moot. This was filed yesterday. I had very little time to review it, to respond. But I did find the case of Inmari Padilla, 222 Federal 3rd, 1184 at 1190. It's a 2009 circuit case. It's a case where a discharge was entered while the appeal on a motion to dismiss was pending, and the court found that the timely filing of a notice of appeal to either a district court or a bankruptcy appellant court will typically divest a bankruptcy court of jurisdiction over the aspects of the case involved in the appeal. And the court in Padilla found, as is true in this case, that the bankruptcy court's discharge of the debtor drastically changed the status quo and amounted to a final adjudication of the substantial rights directly involved in the appeal and that it did not constitute an implementation or enforcement of BAP's mandate. And that is the argument we'd make in this case. And Padilla found that the court's order of discharge was null and void. Well, let me just see if I understand properly. In this case, you made several motions to dismiss, none of them successfully. You did ask for a stay pending appeal, right? Correct. And it was denied? It was denied, and we've appealed that decision. Okay. And in the meantime, what happened is the regular administrative thing happened. The debtor completed a plan and got a discharge. Correct? Correct. Okay. Is that what happened in Padilla? Yes. Was it Chapter 13 where the debtor completed a plan? I don't recall, because as I said, I was checking. I'll take a look. No problem. But even if the case was that the appeal didn't divest the bankruptcy court of jurisdiction, the case law cited by the debtor, if you look at what the test is there, it comes down to can the court fashion relief. And if the case is dismissed, the debtor loses its discharge. Debtors who have been paid pennies on the dollar will then be able to pursue their entire claim against the debtor, who I assume is still running his business since he admits he's running the business, in opposition to the motion to dismiss. So we're saying, first of all, that the court was divested of jurisdiction by the pending appeal to grant the discharge. And even if the court finds that he wasn't divested, that there's a remedy that can be fashioned that the court should deny that the ‑‑ should find that the appeal is not moot. What practically would a ‑‑ I mean, I hear your ‑‑ abstractly I hear your argument about divesting jurisdiction, because you're talking about dismissing a Chapter 13 case. Correct. But under that scenario, I mean, what was going to happen? Well, generally what happens ‑‑ I mean, did we just stop the 13 and tell the debtor don't make any payments for a while? We'll see what happens with the appeal of the motion to dismiss. At this point, the plan, all the payments have been made. But that wasn't true when you appealed, right? No. Okay. So what would be the practical effect of that? Would we say just everybody just wait? Don't make any payments. Don't do anything. We'll just see what happens with the appeal? Well, I mean, that in fact was not what happened. I believe the address is ‑‑ I understand. I'm asking you what would happen. If you're right, what would happen? If I'm right? If you're right, that appealing the denial of the motion to dismiss, divest the Bankruptcy Court of Jurisdiction to simply continue the case, because all that happened here is the case continued and it came to its logical conclusion. That's all that happened. So what do you think ought to have happened? Its logical conclusion essentially is decided what was before the court on the appeal. Okay. I mean, it discharged the debtor, let's close the case. There's nothing left to decide. That's what the debtor is arguing. Okay. Case over. Okay. You lose. It doesn't matter that you had it on appeal. I mean, that's how I view it. But then again, I've had very little time to look at it. I did want to point out to the court, again, if you rely on the debtor's admissions alone, that there is abundant evidence in support which the court should not have excluded in support of the motion to dismiss. And also that the cases cited by the Bankruptcy Court in its decision I think are distinguishable because the Peck and Jones cases were tax cases that involved the same or they were cases that involved the same agreement and different years were sued under. But aside from that, in one of those cases there was no evidence offered. That's not true in our case. We offered evidence. All right. Then you must wrap up because you're over your time. Okay. Well, I will just say that, again, there's substantial evidence before the court, substantial relevant evidence. The evidence produced by the debtor went to monies in, monies out during the bankruptcy that greatly exceeded those reported in the schedules. The debtor's admissions are relevant. He admits that there was abundant money and property brought into the state after the confirmation which was not reported and money out. And I just think it would be the doctrine of collateral estoppel requires that a debtor, I mean a party, get its fair day in court and have the full and fair opportunity to present its case. Applying it in this case would deny the appellant. All right. Thank you. Thank you very much for your argument. This will be under submission.
judges: Taylor, Lafferty, Spraker